## COUNTIES OF BRISTOL, PLYMOUTH, BARNSTABLE ANI DUKES COUNTY, OCTOBER TERM 1848 AT TAUNTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY,  } Justices.
Hon. THERON METCALF,
Hon. RICHARD FLETCHER,

## MEMORANDUM.

All the cases for argument, at this term, were continued *nisi*, and argued and determined at the sittings in Boston, in January, 1849.

MARTIN BOSWORTH & another *vs.* STAFFORD STURTEVAN* & another.

On the trial of an action of trespass *quare clausum fregit*, where both parties claim title to the *locus in quo* under the same person, and the defence is that the defendants own the soil, the declarations of such person, if he be not alive at the time of the trial, are admissible in evidence, for the purpose of proving the existence of a lost deed made by him to one of the parties.

When fixed and known monuments are referred to in a deed, they will control courses and distances mentioned in the deed, if inconsistent with them, and such monuments are to be taken as the true boundaries.

If a deed contains a description sufficiently certain as to the estate to be conveyed, it will pass the estate, although the estate does not agree with all the particulars of the description.

A boundary, mentioned in a deed, may be rejected, when it is clear, from all the circumstances of the case, that it was erroneously inserted.

When two are sued jointly for trespass upon land, and the declaration alleges joint trespasses on certain days, there may be a verdict against both jointly, and a joint assessment of damages for trespasses in which they united; but there cannot be a verdict against both jointly, and a separate assessment of damages against each, for any trespasses committed by them separately, at different times.

TRESPASS for breaking and entering the plaintiffs' close (called Neck Swamp) in Halifax, and cutting down and carrying away timber, trees, &c. There were two counts in the plaintiffs' declaration. The first described the close by metes and bounds, and as containing about four and a half acres; and the second contained a general description of the close, and as containing about four acres; and a single trespass, committed at one time and place, was alleged in each.

The defendants pleaded, severally, the general issue, and filed specifications of defence, denying that the plaintiffs had title to the *locus in quo*, and severally claiming title in themselves.

At the trial before *Hubbard*, J., both parties claimed title, as originally derived from Charles Holmes. The plaintiffs, to prove the existence of a lost deed of the *locus*, made by said Holmes to Seth, Asaph and William Bosworth, — under the first and last of whom the plaintiffs claimed title, — offered parol evidence of the declarations of said Holmes, made to Zebadiah Thompson, more than forty years before the trial, that he (said Holmes) "had sold the swamp to the Bosworths." And said Thompson was permitted (the defendants objecting) to testify to such declarations, made by said Holmes.

The plaintiffs introduced evidence tending to prove the entry of the Bosworths upon the premises, for the purpose of running the lines, and, in one instance, of cutting and carrying off wood from the western part of the lot, by Asaph Bosworth. They also introduced evidence tending to prove

that the defendants, claiming title to the premises, as heirs at law of John Waterman, by virtue of a deed from said Charles Holmes, entered upon the premises, in February, 1845, for the purpose of making partition thereof between themselves, and made a division by marked lines and bounds, and thereupon executed a deed of partition, dated February 12th, 1845 ; and that afterwards, and before this action was instituted, the defendant Sturtevant cut and carried away the timber and wood growing on the lot set off to him, in the aforesaid division and partition, and that Richmond, the other defendant, cut and carried away a portion of the wood and timber growing on the lot set off to him.

The defendants claimed the premises on which the trespasses were alleged to have been committed, by virtue of the aforesaid deed of Charles Holmes to John Waterman. The close conveyed by that deed was described as follows : " Containing four acres, more or less, and is the same lot of swamp I purchased of Joseph and Thomas Holmes, which swamp formerly belonged to Charles Cook; being part of the first share in the thirty-third great lot in the Neck Swamp, bounded as follows ; beginning on the south side of the swamp at a spruce tree marked on one side B., and on the other side H., in the line of widow Briggs's land, thence by Rebecca Briggs's land, north twenty-five degrees west, to a stake in the north line of said share, thence west nine degrees south to the upland of the said John Waterman, thence southerly, by the said Waterman's land, to the bounds first mentioned." A question arose upon the construction of this deed, under the evidence hereinafter mentioned. The defendants' counsel contended that the place of the line of the widow Briggs's land, mentioned in said deed, having been ascertained and admitted, that line must be taken as the monument and line mentioned in the deed, notwithstanding the compass course mentioned in the deed as the line, did not conform to Mrs. Briggs's line. The jury were instructed, that where there were fixed and known monuments referred to in the deed, those monuments would control courses and distances, and

they should adopt such monuments; but if the description was sufficiently certain as to the estate to be conveyed, it would pass the estate, although it should not agree with all the particulars of the description ; and so also, that a boundary might be rejected, when it was clear, from all the other circumstances in the case, that it was erroneously inserted in the deed ; that, as to this deed, the spruce tree marked, in the line of Rebecca Briggs's land, was an admitted fixed monument, and the jury should take that as a starting point ; that though the description was, "thence by Rebecca Briggs's land," yet the further description of that line was, "north twenty-five degrees west, to a stake in the north line of said share ; " whereas it appeared in evidence that the Briggs line was well known as the middle line or boundary between the great lots number thirty-three and number thirty-four, and that, at the end of Mrs. Briggs's line, where it struck the north-east corner of lot number thirty-three, the boundary was a cedar stump.

There was also evidence to show that there was a stake where the line, drawn twenty-five degrees west from the spruce tree in Mrs. Briggs's corner, would strike the north line, though there was no proof of the identity of the stake ; and there was also evidence tending to show that the east line in the deed, as claimed by the defendants, corresponded with a marked line on the premises, allowing for the usual variation of the compass. And the jury were instructed, that they might determine, from all the evidence in the case, whether the east line of the premises was by the Briggs land, or whether it ran from the spruce tree in the Briggs line twenty-five degrees west, as contended for by the plaintiffs.

On the subject of damages, the jury were instructed, that if they were of opinion that the defendants were jointly guilty of more than one distinct trespass, they might find them guilty on both counts, and assess damages accordingly ; but if they found them guilty of only one joint trespass, and each severally guilty of distinct trespasses, they might find both defendants guilty on one count, and one defendant guilty on

the other, if the several distinct trespasses were committed **at** different times; because distinct trespasses, committed at different times, could not be proved, but only one trespass, under either of the counts in the plaintiffs' declaration, which alleged a single trespass, committed at one time and place, and the charge was not laid with a *continuando,* or with an averment of a continuance of the trespass on divers days and times; and that if the jury were of opinion that the defendants were severally guilty of distinct trespasses, they might find each guilty, and assess several damages, according to the amount of the respective injuries committed.

The jury, after they had been out for some time, returned into court, and put the following question to the judge: "If the jury are satisfied that the defendants were joint trespassers in entering the plaintiff's close and dividing the same, were they not joint trespassers in cutting, after division? and if they were not joint trespassers, can the jury assess damages against both defendants, in proportion as they may be satisfied that the defendants severally committed the same?" Before the judge answered this question, the plaintiffs' counsel (wishing to connect the several cuttings with the joint act of division, and not being satisfied with the damages which might be assessed for the single joint trespass for entering to divide the land) requested the judge to instruct the jury, as follows: "If the jury are satisfied that the defendants agreed to enter, with a view of cutting off the lot, and then dividing the proceeds between themselves, and that the division was a part of the means by which they carried out that intent, then it was immaterial whether they cut by a division line made before cutting, or not, and that the entry to make the line was such a trespass as would hold them jointly liable." The judge thereupon instructed the jury, that in finding the defendants joint trespassers in entering the close and dividing the same, it would not follow, as a necessary consequence, that they were joint trespassers in entering afterwards and cutting and carrying away the timber and wood; but if the jury were satisfied that the defendants, believing

themselves to be the owners of the land, entered upon it and divided it, for the purpose of severing their interests, and made a partition deed between them, to effect that purpose, and they afterwards severally committed the trespasses complained of, without any coöperation, then the jury could not find them guilty as joint trespassers, after such partition ; and that the mere entry, for the purpose of making partition, under the circumstances, would subject them to nominal damages only, as no actual injury was shown ; but if, on the other hand, the jury were "satisfied that the defendants agreed to enter, with a view," &c., (adopting the language of the plaintiff's counsel, above stated,) then the defendants might be held as joint trespassers in cutting and carrying away the timber and wood.

Under these instructions, the jury returned the following verdict : "The jury find the defendants guilty, and assess damages against Stafford Sturtevant, in the sum of one hundred and thirty dollars, Cyrus Richmond in the sum of sixty-five dollars." At the request of the respective counsel, the jury were then inquired of, whether they found the defendants jointly guilty of cutting and carrying away the timber and wood, or severally guilty ; and how they found as to entering the close for the purpose of division. The jury returned, for answer, that as to the entering upon the close, for the purpose of division, the defendants were joint trespassers, and as to the cutting and carrying away of the timber and wood, after the partition, they were distinct and independent acts of trespass, committed by the two defendants separately. The plaintiffs' counsel then requested that the verdict might stand as it was returned, with the addition of the words " in manner and form as the plaintiffs have declared against them," to be inserted after the word "guilty." But the defendants' counsel, thinking that the language of the verdict implied a finding that the defendants were jointly guilty of the cutting, &c., and an assessment of several damages, submitted a form of verdict, which the judge directed to be used, and which was affirmed, as follows : " The jury find the defendants not

guilty of any joint trespass; and they further find each of the defendants guilty of a separate trespass on the plaintiffs' close, and assess damages against said Sturtevant one hundred and thirty dollars, and against said Richmond sixty-five dollars."

The defendants objected to judgment against either of them, inasmuch as the jury had negatived any joint trespass, committed by them, and as the plaintiffs, by joining the defendants in this action, deprived each one of the testimony of the other. They further objected to judgment against more than one of them, and to any judgment against either, until the plaintiffs should enter a *nol. pros.* against the other.

The case was reserved for the consideration of the whole court. If the rulings and instructions at the trial were right, the verdict is to stand; otherwise it is to be set aside and a new trial granted. And if, upon the whole matter, the verdict can be supported in whole, or in part, the court may order as to its form, and as to the proper judgment to be entered.

*T. P. Beal,* for the defendants. 1. The testimony of Thompson as to Holmes's declarations was inadmissible; being mere hearsay. *Van Deusen* v. *Turner,* 12 Pick. 533; *Jackson* v. *Cris,* 11 Johns. 437; *Taylor* v. *Marshal,* 14 Johns. 204. In *White* v. *Loring,* 24 Pick. 319, which will be cited on the other side, the demandant was *heir* of the party whose declarations were admitted against him. Besides, in the case at bar, the plaintiffs do not admit that Holmes was ever the owner of the *locus in quo.*

2. The two rules laid down by the judge, as to boundaries described in a deed, were correct; but he also instructed the jury, that they might depart from monuments, if they thought they ought to do so, in this particular case. See *Howe* v. *Bass,* 2 Mass. 380; *Pernam* v. *Wead,* 6 Mass. 131. In *Davis* v. *Rainsford,* 17 Mass. 207, there was a conflict of monuments; so that it was not an exception to the rule that monuments must control courses and distances. And, in that case, the rule adopted in *Worthington* v. *Hylyer,* 4 Mass. 196, was allowed to prevail, *ut res magis valeat quam pereat.*

3. The verdict against the defendants severally cannot be sustained. See 1 Saund. 207, note (2); *Woodruff* v. *Halsey*, 8 Pick. 333. If the cases of *Kennebeck Purchase* v. *Boulton*, 4 Mass. 419, and *Kempton* v. *Cook*, 4 Pick. 307, are sound law, yet the case at bar is different from those. The defendants, in those cases, committed the trespasses at the same time.

*T. G. Coffin*, for the plaintiffs.

1. Thompson's testimony was rightly received. *Davis* v. *Spooner*, 3 Pick. 284; *White* v. *Loring*, 24 Pick. 319; *Daggett* v. *Shaw*, 5 Met. 223.

2. The jury were rightly instructed as to the boundaries, according to the cases cited, on this point, by the defendants' counsel. See also *Thatcher* v. *Howland*, 2 Met. 41.

3. The question as to the verdict is settled by the cases of *Kempton* v. *Cook* and *Kennebeck Purchase* v. *Boulton ;* and the authority of a judge, at the trial, to order the finding of a jury to be put into proper legal form, before it is affirmed and recorded as a verdict, is unquestionable.

This case was argued and decided at the last October term.

WILDE, J. Three exceptions were taken, by the defendants' counsel, to the rulings of the judge who presided at the trial of this cause. The first is, that the declarations of Charles Holmes were not competent evidence to prove the contents of a lost deed. But as both parties claim title from Holmes, and as we presume he was not living at the time of the trial, although that fact is not expressly stated in the report of the evidence, we are of opinion that his declarations were rightly admitted. *White* v. *Loring*, 24 Pick. 322, 323.

The second exception is to the ruling of the court as to the construction of the deed from Charles Holmes to John Waterman, from which the defendants derive their title. But we are of opinion, that the instructions to the jury were strictly correct, according to the well established rules of construction as to the descriptive words in a conveyance. Whether the finding of the jury was supported by the evidence or not, is a question not open on these exceptions.

The third and last exception is, that the instructions to the jury were incorrect, as to the defendants' liability as joint or several trespassers, and to the form of the verdict, as directed by the court. With regard to this exception, we think that the verdict, as directed, is not in conformity with the finding of the jury, as stated by them. But this error may be corrected, and the verdict may be altered, so as to conform to the finding of the jury. That finding was, that the defendants were joint trespassers, in entering the plaintiffs' close for the purpose of division or partition; and that, as to the cutting and carrying away of the timber and wood, after partition, they were distinct and independent acts of trespass committed by the defendants separately.

Upon this finding, we think the plaintiffs have a right to elect either to enter a *nol. pros.* as to one of the defendants, and take judgment against the other, or they may have judgment against both for nominal damages. This is not like the case of the *Kennebeck Purchase* v. *Boulton*, 4 Mass. 419; it not appearing that the defendants committed the trespasses at the same time.

The plaintiffs elected to take judgment against both defendants, for nominal damages, and such judgment was entered.